IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-10035
_____


In The Matter Of: TLI INC

                                        Debtor
------------------------------------------------------------

RANGER INSURANCE COMPANY

                                        Appellant

v.

HOLTON J WOLCOTT, JR; JOHN F WOLCOTT; GEORGE M WOLCOTT;
JANET WOLCOTT DICKERSON; JOAN WOLCOTT LANE; HOLTON J
WOLCOTT, JR, in his capacity as Executor of the
Succession of Kathryn H Wolcott

                                        Appellees

_____

Appeal from the United States District Court
for the Northern District of Texas
(3:98-CV-394-G)
_____

April 24, 2000

Before KING, Chief Judge, and REAVLEY and STEWART, Circuit
Judges.

PER CURIAM:[*]

    Appellant Ranger Insurance Company ("Ranger") appeals from

the district court's judgment affirming the bankruptcy court's

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

decision to modify an injunction contained in Debtor TLI, Inc.'s Third Amended Plan of Reorganization (the "Plan"). We AFFIRM.

The injunction in the Plan barred all tort claims against TLI and its insurers except in accordance with its terms. If certain conditions were met, the injunction was automatically modified to allow tort claims against TLI's insurers to proceed. Appellees Holton Wolcott, Jr., in his individual capacity and as Executor to the Succession of Kathryn Wolcott, John Wolcott, George Wolcott, Janet Wolcott Dickerson, and Joan Wolcott Lane (collectively, the "Wolcotts") have a tort claim against Ranger, based on its insuring of TLI. Rather than following the conditions set forth in the injunction, however, the Wolcotts simply amended a prepetition tort action against TLI in Louisiana state court to add Ranger as a defendant. When Ranger moved the bankruptcy court to hold the Wolcotts in contempt, the court found that the purpose of the injunction had been served and therefore it modified the injunction to allow the Louisiana action to proceed. Ranger appealed the bankruptcy court's judgment to the district court, which affirmed. Undeterred by adverse rulings in two courts, Ranger timely appeals.

The Plan's injunction served a number of purposes. One purpose was to minimize the costs incurred in processing tort claims. To that end, the injunction allowed TLI's insurers to require that any tort claimant with a claim against the insurer submit to the Plan's Claims Resolution Procedure ("CRP") prior to the "commencement or continuation" of any tort action. The CRP essentially required the parties to exchange settlement offers

and submit to mediation.  If the insurer waived submission of the claim to the CRP, or if the claim was submitted to the CRP but the parties were unable to settle, the injunction was automatically modified to permit the claimant to pursue his complaint in a separate, non-bankruptcy, action in the appropriate court.[1]

The injunction was also meant to provide TLI and its insurers with notice and an accurate valuation and resolution of all potential tort claims.  Monitoring the amount of potential liability was of particular importance to insurers such as Ranger, who insured TLI under "fronting" policies.  Under such a policy, an insurer has a right of indemnity against TLI for one hundred percent of any amount paid to tort claimants under the policy.  The Plan established a claims fund to satisfy, on a pro rata basis, these types of indemnification claims by insurers.

We accept, for the purposes of this appeal, Ranger's

---

[1] Ranger contends that the Plan requires that any tort proceedings against TLI's insurers be brought in the United States District Court for the Northern District of Texas (the "Northern District").  Ranger misreads the language of the Plan. Although the Plan states that its confirmation constitutes a "recommendation and finding ... that pursuant to [28 U.S.C. § 157] all Tort Claims should be removed to and/or heard by the United States District Court for the Northern District of Texas[,]" the same section also states that a claimant may pursue a tort claim "in an appropriate Court of competent jurisdiction." While the Plan's language may have bolstered a motion by Ranger to remove the Louisiana action to the Northern District, such language does not bar the Wolcotts from pursuing their claim in Louisiana.  See Baumgart v. Fairchild Aircraft Corp., 981 F.2d 824, 831 (5th Cir. 1993) (holding that 28 U.S.C. § 157(b)(5) "provides that consolidation of [personal injury] actions in the forum where the bankruptcy is pending is permissible, but not mandatory").

3

contention that we should review the bankruptcy court's decision to modify the injunction under an abuse of discretion standard and in accordance with the principles enunciated by this court in Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc., 73 F.3rd 546 (5th Cir. 1996). In that case, we held that "[g]enerally, a court should only modify an injunction to achieve the original purpose of the injunction, if those purposes have not been fully achieved." Id. at 579 (citing United States v. United Shoe Machinery Corp., 391 U.S. 244, 248-49 (1968)). So long as the lower court's decision is reasonable, it will not be found to be an abuse of discretion. See Edward H. Bohlin Co. v. Banning Co., Inc., 6 F.3d 350, 353 (5th Cir. 1993). Given the circumstances of this case, we find that the bankruptcy court's decision did not constitute an abuse of discretion.

On appeal, Ranger argues that the true purpose of the injunction was to provide TLI and its insurers with finality by limiting tort claims to those claimants who participated in the bankruptcy proceedings. Ranger contends that the bankruptcy court failed to take this purpose into account, and as a result, the court abused its discretion in modifying the injunction. Ranger also complains that the claims fund, from which it could recover a portion of any money paid to the Wolcotts, is defunct. Therefore, Ranger contends that it will be irreparably harmed if the Wolcotts' tort action is allowed to proceed.

Ranger's argument is undercut by its lack of diligence in attempting to enforce the injunction. On October 3, 1986, the

4

Wolcotts filed a tort action against TLI in Louisiana state court.  Bankruptcy proceedings were instituted against TLI on November 10, 1987, and the Plan was confirmed on October 7, 1988. The Wolcotts added Ranger to their Louisiana state court tort action on April 3, 1996.  Ranger filed an answer to the Wolcotts' complaint on June 26, 1996.  However, Ranger did not move the bankruptcy court to hold the Wolcotts in contempt until February 8, 1997.

Furthermore, during the seven months between filing its answer in Louisiana and bringing its motion for contempt, Ranger actively defended itself and engaged in a series of settlement negotiations with the Wolcotts.[2]  Ranger never attempted to remove the case to the Northern District.  Ranger offers no explanation for why it defended the case and independently pursued settlement negotiations with the Wolcotts rather than immediately seeking to enforce the injunction.

The purpose of the injunction was to inform TLI and its insurers of the nature and value of outstanding tort claims and to encourage the prompt and efficient settlement of those claims. Despite ample notice of the Wolcotts' claim, Ranger did not immediately move to enforce the injunction, but instead answered, defended, and attempted to settle the claim -- only seeking the protection of the injunction as a last resort.  We agree with the lower courts that, in this instance, the purpose of the

---

[2] As the lower courts noted, these negotiations were essentially those required by the CRP.

5

injunction has been served.  Therefore, the bankruptcy court did not abuse its discretion by modifying the injunction.   AFFIRMED.

6